IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

DIANE KINZEBACH,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-2053

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

*I.*     *INTRODUCTION* ............................... 2

*II.*    *PROCEDURAL BACKGROUND* ..................... 2

*III.*   *PRINCIPLES OF REVIEW* ........................ 3

*IV.*   *FACTS* ....................................... 4
    *A.*    *Kinzebach's Education and Employment Background* .......... 4
    *B.*    *Vocational Expert's Testimony from August 26, 2010 Administrative Hearing* ................................... 5
    *C.*    *Kinzebach's Medical History* ..................... 6

*V.*     *CONCLUSIONS OF LAW* ........................ 11
    *A.*    *ALJ's Disability Determination* .................. 11
    *B.*    *Objections Raised By Claimant* .................. 13
    *C.*    *Reversal or Remand* .......................... 19

*VI.*   *CONCLUSION* ................................ 20

*VII.*  *ORDER* ..................................... 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Diane Kinzebach on September 6, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Kinzebach asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Kinzebach requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On August 24, 2007, Kinzebach applied for disability insurance benefits. Her application was denied on November 28, 2007. She reapplied for disability insurance benefits on February 20, 2009. Her 2009 application was denied on April 7, 2009. On July 27, 2009, the application was denied on reconsideration. On August 26, 2010, Kinzebach appeared via video conference with her attorney before ALJ Thomas M. Donahue for an administrative hearing. In a decision dated November 23, 2010, the ALJ denied Kinzebach's claims.

Kinzebach sought review of the ALJ's decision, and on March 1, 2012, the Appeals Council vacated the ALJ's decision and remanded the case back to the ALJ for further consideration of Kinzebach's claims. On March 14, 2013, ALJ Donahue held a second administrative hearing. In a decision dated April 26, 2013, the ALJ, again, denied Kinzebach's claims. Kinzebach appealed the ALJ's second decision. On July 7, 2014, the Appeals Council denied Kinzebach's request for review. Consequently, the ALJ's April 26, 2013 decision was adopted as the Commissioner's final decision.

Kinzebach filed the instant action for judicial review on September 6, 2014.

---

[1] On October 29, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two

> inconsistent conclusions, thus it embodies a zone of choice
> within which the [Commissioner] may decide to grant or deny
> benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Kinzebach's Education and Employment Background

Kinzebach was born in 1955. She is a high school graduate. After high school, she attended one year of college. In the past, she has worked as a receptionist, tool crib attendant, material clerk, and press machine feeder.

## B. Vocational Expert's Testimony from August 26, 2010 Administrative Hearing[2]

At the hearing, the ALJ provided vocational expert Carma Mitchell with following hypothetical:

> Q: First hypothetical would be age 54, female, she has a high school education and one year of college. Taken from Exhibit 10F, can sit two hours at a time for six of an eight-hour day, standing two hours at a time for six of an eight-hour day. Walking three blocks, no climbing of ladders, ropes and scaffolds, no working at heights. Under this hypothetical would [Kinzebach] be able to do any of her past relevant work?
>
> A: Okay, yes she would. She would be able to do -- my understanding there wasn't any lifting limitation?
>
> Q: 20/10.
>
> A: Okay, she'd be able to do the receptionist work both as she did it and as per the DOT. Also the tool crib attendant as she did it, not as per DOT. She could do the material clerk both as she did it and as per the DOT. And then the press machine feeder would be precluded.

(Administrative Record at 71.) The vocational expert also testified that under such limitations, Kinzebach could perform the following additional jobs: (1) information clerk, (2) appointment clerk, (3) order clerk, (4) office helper, and (5) charge account clerk.

The ALJ provided the vocational expert with a second hypothetical for an individual with the ability to:

> lift 10 pounds occasionally, five pounds frequently. Sitting for six of an eight-hour day, standing 30 minutes for at least six of an eight-hour day. . . . [W]alking three blocks, no climbing ladders, ropes and scaffolds. No working at heights.

---

[2] At the second administrative hearing held on March 15, 2013, and on remand from the Appeals Council, the ALJ did not provide the vocational expert with any new hypothetical questions. Kinzebach's attorney also did not provide the vocational expert with any new hypothetical questions. *See* Administrative Record at 55-56.

(Administrative Record at 72.) The vocational expert testified that under such limitations Kinzebach could perform her past work as a receptionist, and her past work as a tool crib attendant and material clerk, but only as she performed those jobs, not in accordance with the DOT. According to the vocational expert, Kinzebach would be precluded from performing her other jobs.

The ALJ provided the vocational expert with a final hypothetical for an individual who is capable of:

> Lifting 10 pounds occasionally, five pounds frequently, sitting . . . two hours at a time for at least six of an eight-hour day. Standing up to 30 minutes for three of an eight-hour day, walking up to three blocks, no climbing of ladders, ropes and scaffolds, no working at heights. [The individual] would need frequent, unscheduled rest breaks.

(Administrative Record at 73.) The vocational expert responded that such a limitation would preclude competitive employment.

Kinzebach's attorney also questioned the vocational expert:

> Q: . . . if maximum tolerance for work was four hours in an eight-hour day, maximum ability to stand would be let's say 30 minutes and that's in an eight hour day as I read this in maximum. Could sit would be 30 minutes, would there be any possible work in such a hypothetical?
> A: Not on a full-time basis. My understanding it's four hours total, the person could work out of four -- eight-hour day?
> Q: That's correct.
> A: So, no, not on a full-time competitive basis.

(Administrative Record at 73-74.)

### C. Kinzebach's Medical History

On October 5, 2007, Kinzebach underwent an MRI on her lumbar spine. Dr. Donald Breit, M.D., indicated that the reason for the MRI was Kinzebach's complaint

6

of pain in her lower extremities. Dr. Breit interpreted the MRI and found that Kinzebach had: (1) degenerative disc disease at L3-4, L4-5, and L5-S1; (2) posterior anular tears at L4-5 and L3-4; (3) stable disc space narrowing at L5-S1; (4) no disc herniation, central canal stenosis, or neural foraminal stenosis; and (5) mild facet inflammation at L5-S1.

On November 28, 2007, Dr. Judy Panek, M.D., reviewed Kinzebach's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Kinzebach. Dr. Panek determined that Kinzebach could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Panek also found that Kinzebach could occasionally climb, kneel, crouch, and crawl; and frequently balance and stoop. Dr. Panek further opined that Kinzebach should avoid concentrated exposure to extreme cold and vibration, and avoid even moderate exposure to hazards, such as heights and machinery. Dr. Panek found no manipulative, visual, or communicative limitations.

On April 7, 2009, Dr. Chrystalla Daly, D.O., reviewed Kinzebach's medical records and provided DDS with a physical RFC assessment for Kinzebach. Dr. Daly determined that Kinzebach could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Daly also determined that Kinzebach could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds. Dr. Daly found no manipulative, visual, communicative, or environmental limitations.

On July 9, 2009, Kinzebach underwent another MRI on her lumbar spine. The MRI was ordered due to Kinzebach's complaints of chronic low back pain, bilateral hip and leg pain, and numbness and tingling in both legs. Dr. Timothy Roses, M.D., interpreted the MRI and determined that Kinzebach had moderate disc space narrowing at L5-S1 and a mild disc protrusion at L4-5. Dr. Roses also found some degenerative facet hypertrophy in the mid- to lower lumbar spine. Lastly, Dr. Roses found mild to moderate bilateral neural foraminal narrowing at L4-5 and L5-S1.

On June 28, 2010, Kinzebach's primary treating physician, Dr. James L. Peterson, M.D., filled out a "Physical Residual Functional Capacity Form" for Kinzebach. Dr. Peterson diagnosed Kinzebach with chronic low back pain, chronic pain syndrome, depression, history of colon cancer, and fecal incontinence. Dr. Peterson opined that Kinzebach could: (1) work four hours per day, (2) stand for 30 minutes at one time, (3) sit for 30 minutes at one time, (4) lift 20 pounds occasionally, and (5) lift 10 pounds frequently. Dr. Peterson also determined that Kinzebach could occasionally bend, crawl, stoop, balance, climb, and kneel. Dr. Peterson concluded that Kinzebach suffers from "severe" pain which interferes with her day-to-day functioning and associations, and causes sleep disturbance.

Kinzebach underwent a third MRI of her lumbar spine on November 10, 2011. Kinzebach continued to complain of low back pain radiating to her lower extremities. In interpreting the MRI, Dr. John Dedic, M.D., found a central disk protrusion/extrusion at L4-5 with nerve root encroachment.

On April 19, 2012, Kinzebach met with Dr. Russell Buchanan, M.D., complaining of low back pain and leg pain. Kinzebach rated her pain, when using medication at 5 on a scale of 1 to 10, with 10 being the greatest pain. When not using medication, she rated her pain at 8. Upon examination, Dr. Buchanan noted that:

> Her exam showed normal strength bilateral lower extremities.
> Exam does show weakness in heel walking on the left. She

> does have a large L4[-]5 disc herniation, but, does not correlate with all of her current symptoms, although, I do believe a bilateral laminectomy at L4[-]5 will benefit her, and alleviate a great portion of the leg symptoms. . . . Symptoms are still too severe to continue long term with conservative treatment.

(Administrative Record at 1039.) Dr. Buchanan diagnosed Kinzebach with lumbar herniated disc with myelopathy, degeneration of lumbar/lumbosacral disc, and lumbar spondylosis. Dr. Buchanan recommended back surgery as treatment.

On May 10, 2012, Kinzebach underwent back surgery. Dr. Buchanan performed a bilateral lumbar laminectomy at L4-L5, and a diskectomy on the right at L4-L5. Dr. Buchanan also performed decompression of the right and left L3 and L4 nerve roots. At her three week follow-up appointment, Kinzebach reported improved back pain, but continued to have bilateral lower extremity pain.

On September 24, 2012, at the request of DDS, Kinzebach met with Robert M. Welshons, PA-C, for a consultative examination. Dr. Adam J. Roise, M.D., also assisted with the consultative examination.[3] Welshons provided a thorough review of Kinzebach's medical history:

> [Kinzebach] was diagnosed with colon cancer in 2004. Because it was an aggressive cancer, she had surgery as well as chemotherapy and radiation very soon after that, in late 2004. One to two years after the radiation and chemotherapy she developed leg and hip pain that was felt in both hips in the area of the trochanters, both thighs anteriorly, and into both calves. This has been thought to be related to the radiation therapy and to changes occurring because of radiation. Following the bowel resection she also developed a stricture

---

[3] In the examination report, Dr. Roise stated "I have interviewed and examined [Kinzebach] and confirm the pertinent findings. I have discussed the case with Robert Welshons, PA-C, and agree with the findings as documented." Administrative Record at 1144.

9

> and some fecal incontinence. . . . The incontinence can still bother her episodically today. Back pain became more symptomatic for her more recently. . . . She had treatment for her back pain locally. She tried all conservative treatment options before she eventually had to have surgery. . . . She has seen three pain management specialists in the area over the years. She has had epidurals, which generally gave her very short-lived relief. . . . Eventually she had a repeat MRI which did show some changes, and suggested she might be helped by [another] surgery. She had surgery in May 2012, which did help decrease her back pain for a short time. Nothing has ever changed the discomfort in the legs thought secondary to radiation.

(Administrative Record at 1142.) At the time of the examination, Kinzebach reported increased low back pain which limited her ability to stand and walk. She stated that ice, rest, and laying down helped reduce the pain. In describing her activity levels, Welshons noted that:

> she does do grocery shopping but has moderate back pain by the end of the shopping. Her grocery trips tend to be short in length. She cannot stand long enough to wash all her dishes at one time. She does cooking by standing and sitting alternatively. She does the laundry and other housework in ten or fifteen minute intervals, then rests for 30 minutes or longer.

(Administrative Record at 1142-43.) Upon examination, Welshons found that:

> In the lower extremities there is tenderness over the trochanteric areas bilaterally. Hip flexion is decreased secondary to discomfort as is hip extension. Both knees show decreased flexion as well, particularly on the left. . . . [Kinzebach] has good upper and lower gross extremity strength[.] . . . Gait is slow but without assistive devices.

(Administrative Record at 1143.) Welshons diagnosed Kinzebach with low back pain and leg pain. Welshons noted that Kinzebach "has tried medication, surgery, therapy, pain management specialists as well as seen a neurosurgeon. She has a chronic back pain that

10

limits what physically demanding work she can do. She has exhausted most treatment options."[4] Welshons concluded that:

> Because of her chronic pain she would not be a good candidate for a physically demanding occupation. She has problems with standing, walking, moving about and sitting for extended periods of time over an eight hour day. She has no troubles with speaking or hearing or handling objects. She should not be stooping, kneeling or crawling. She has no restrictions to work environments but should be protected against falls. She would probably be more symptomatic in very cold environments.

(Administrative Record at 1144.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Kinzebach is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R.

---

[4] Administrative Record at 1144.

§ 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description

of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Kinzebach had not engaged in substantial gainful activity since August 21, 2007. At the second step, the ALJ concluded from the medical evidence that Kinzebach had the following severe impairments: history of rectal cancer, status post surgery, chemotherapy, and radiation, degenerative disc disease of the lumbar spine, non-severe depression, and non-severe bowel incontinence. At the third step, the ALJ found that Kinzebach did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Kinzebach's RFC as follows:

> [Kinzebach] had the residual functional capacity to perform light work . . . except lifting more than 20 pounds occasionally and 10 pounds frequently. She can sit two hours at a time for up to six hours in an eight hour workday; she can stand two hours at a time for a total of six hours in an eight hour workday; she can walk 3 blocks at a time. The individual should never climb ladders, ropes, or scaffolds or work at heights.

(Administrative Record at 22.) Also at the fourth step, the ALJ determined that Kinzebach could perform her past relevant work as a receptionist, tool crib attendant, and material clerk. Additionally, and in the alternative, at the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Kinzebach could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Kinzebach was not disabled.

### B. Objections Raised By Claimant

Kinzebach argues that the ALJ failed to properly consider and weigh the opinion evidence provided by her long-time treating physician, Dr. Peterson. Kinzebach further argues that the ALJ's RFC assessment is flawed due to the ALJ's improper consideration of Dr. Peterson's opinions. Kinzebach concludes that this matter should reversed and

remanded for calculation of benefits, or in the alternative, remanded for further consideration of Dr. Peterson's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given

controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR 96-2P, 1996 WL 374188 (1996).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his first decision, the ALJ weighed Dr. Peterson's opinions as follows:

> Greater weight is given the opinion with respect to the physical limitations as a portion of the limitations have been incorporated in the residual functional capacity assessment and

> are consistent with the record as a whole. However, little
> weight is given to the opinion regarding mental limitations as
> the statements appear to lie outside the area of expertise.

(Administrative Record at 89.) Kinzebach appealed the ALJ's first decision, and the Appeals Council remanded the matter to the ALJ for, among other things, further consideration of Dr. Peterson's opinions. Specifically, the Appeals Council ordered:

> On June 28, 2010, treating source Dr. James Peterson opined that [Kinzebach] could work for four hours a day at a light lifting level, and could sit/stand 30 minutes at a time with occasional postural limitations (Exhibit 19F). The Administrative Law Judge provided some weight to these limitations, but did not specifically discuss the limitation that [Kinzebach] could work for only four hours a day. Further evaluation of this opinion is necessary.

(Administrative Record at 101.) On remand, the ALJ addressed Dr. Peterson's opinions as follows:

> A Physical Residual Functional Capacity form and a Mental Residual Functional Capacity form were completed by Dr. Peterson, [Kinzebach's] treating physician on June 28, 2010 (Exhibit 19F). The doctor opined [Kinzebach] could work four hours per day, among other limitations. Pain was rated as severe and was opined to interfere with day to day function and be associated with sleep disturbance.
>
> The undersigned does not attribute much weight to the opinions. The doctor's opinions are not supported by signs and findings consistent with the degree of limitation indicated.
>
> The opinion relies on complete acceptance of [Kinzebach's] allegations concerning the existence, persistence and intensity of symptoms and functional limitations which the record as a whole and inconsistencies establish are not entitled to full credibility and are an underrepresentation of function.

> The opinions are inconsistent with other evidence and inconsistencies in the record as a whole now before the undersigned which the treating doctor did not have available.

(Administrative Record at 27-28.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ has not fully met these requirements. Here, the ALJ discounts Dr. Peterson's opinions because his opinions are: (1) not supported by signs and symptoms, (2) based on Kinzebach's subjective allegations of pain, and (3) inconsistent with evidence not available to Dr. Peterson at the time he provided his opinions on Kinzebach's functional limitations. At the outset, the Court finds the ALJ's reasoning vague and generic. At various points in his decision, the ALJ points out instances where Kinzebach indicated that her pain was less or better, and she was able to function fairly well.[5] However, the ALJ completely ignores evidence in the record where Kinzebach's signs and symptoms show greater pain and functional limitations. For example, in June 2010, Patricia Bischoff, ARNP, a treating source noted Kinzebach had pain in her back and legs. On examination, Bischoff found that Kinzebach showed tenderness with palpation on her low back and legs.[6] Similarly in April 2011, Angela Schreiber, PA-C, a treating source, met with Kinzebach regarding back and leg pain. Upon examination,

---

[5] *See* Administrative Record at 24-31.

[6] *Id.* at 709-711.

Schreiber found low back and lower extremity tenderness and poor flexion.[7] In February 2012, Kinzebach was again found to have back pain with radiculopathy and degenerative disc disease.[8] Moreover, while in his decision, the ALJ focuses on instances where Kinzebach's back pain appeared better in January and February 2012, he glosses over the fact that she underwent back surgery in May 2012.

The Court is also unpersuaded that Dr. Peterson's reliance on "complete acceptance of [Kinzebach's] allegations concerning the existence, persistence and intensity of symptoms and functional limitations" is a "good" reason for rejecting Dr. Peterson's opinions. "A patient's report of complaints, or history, is an essential diagnostic tool" for any doctor when he or she is offering a medical opinion or diagnosis. *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997); *see also Brand v. Secretary of Dept. of Health, Ed. and Welfare*, 623 F.2d 523, 526 (8th Cir. 1980) ("Any medical diagnosis must necessarily rely upon the patient's history and subjective complaints.").

Lastly, the ALJ also fails to address or point to specific evidence in the record of "other evidence and inconsistencies in the record as a whole . . . which the treating doctor did not have available." Moreover, in his decision, the ALJ essentially adopts the RFC of the non-examining state agency doctors, however, the state agency doctors made their RFC assessments in 2009, *prior* to Dr. Peterson's 2010 opinions on Kinzebach's functional limitations.

Additionally, the Court observes that the ALJ completely failed to address the issue of Dr. Peterson's opinion that Kinzebach is only capable of working four hours of an eight-hour workday. The Court finds the ALJ's failure to address this issue significant because it is the very issue the Appeals Council ordered the ALJ to address on remand.

---

[7] *Id.* at 913-15.

[8] *Id.* at 956-58.

Therefore, under such circumstances, and having reviewed the entire record, the Court concludes the ALJ failed to give "good reasons" for rejecting the opinions of Dr. Peterson. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Peterson's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Peterson's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Peterson's opinions and support his reasons with evidence from the record.

### *C. Reversal or Remand*

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability."

*Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to the opinions of Dr. Peterson. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must provide clear reasons for accepting or rejecting the opinions of Dr. Peterson. The ALJ must support his reasons for accepting or rejecting Dr. Peterson's opinions with evidence from the record.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 31st day of May, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA